Russell Davis (SBN 177959)
PACIFIC JUSTICE INSTITUTE
29 Lakewood Ave.
San Francisco, CA 94127
Tel. (415) 310-6575
rdavis@pji.org

Kevin T. Snider (SBN 170988)
PACIFIC JUSTICE INSTITUTE
ksnider@pji.org
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
ksnider@pji.org

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANNON HARTMAN, KATIE LIGHTFOOT, MD,<br><br>    Plaintiffs,<br><br>v.<br><br>SANTA CLARA COUNTY; PAUL E. LORENZ, Executive Director of Santa Clara Valley Medical Center, in his official capacity only; DR. DAVID JACOBSON, Director of Medicine Residency at Santa Clara Valley Medical Center, in his official capacity only; JEFFREY V. SMITH, County Executive for Santa Clara County, in his official capacity only; DOES 1-100,<br><br>    Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES**<br><br>[Demand for Jury Trial] |

1. COME NOW Plaintiffs SHANNON HARTMAN and KATIE LIGHTFOOT, MD, employees of Defendant SANTA CLARA COUNTY, seeking declaratory and injunctive relief, in the form of a preliminary and permanent injunction, barring Defendants, and all those in active concert, from abridging Plaintiffs' constitutionally and statutorily protected rights guaranteed by Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act. Plaintiffs also seek damages for violation of their fundamental civil rights.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983 and 1988 because the Defendants are violating Plaintiffs' civil rights; and 42 U.S.C. § 2000e-5(f)(3), which confers original jurisdiction on federal district courts to address the deprivation of rights, privileges, and immunities secured by the United States Constitution and federal law, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

3. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure, Rule 57 and 65.

4. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

5. This Court has the authority to award Plaintiffs' attorneys' fees and costs associated with this action pursuant to 42 U.S.C. §§ 1983 and 1988 and other applicable laws.

6. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b) because the relevant events have occurred and are threatened to occur in this jurisdictional district and division.

-2-

**The Vaccine Mandate**

7. On August 5, 2021, Defendant JEFFREY V. SMITH, County Executive for SANTA CLARA COUNTY ("SCC"), issued an order that all County employees were to be vaccinated by November 1, 2021, or risk losing their jobs. Defendant PAUL E. LORENZ, Executive Director of Santa Clara Valley Medical Center ("SCVMC"), implemented the County vaccine mandate at SCVMC, a public agency of SCC.

## PARTIES

**Plaintiffs**

8. Plaintiff SHANNON HARTMAN was, at all times relevant to this action, a qualified/eligible employee of Defendant SCC, working at SCVMC, within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. HARTMAN is a Christian who believes in the sanctity of life. She objects to taking the COVID-19 vaccines because they are derived from aborted fetal stem cells, in direct contradiction to her Christian faith. She also recovered from COVID-19 and has more robust immunity to the disease than any vaccine can provide. She had been working full time during the height of the pandemic, without contracting or spreading COVID-19 at that time (March 2020 to March 2021). Her request for religious accommodation to the vaccine mandate, based on her sincerely held religious beliefs and her responses to questionnaires provided by SCVMC, was provisionally granted; however, no reasonable accommodation was made. She is a radiation therapist and was offered a demotion to clerical worker at a loss of $120,000.00 per year in pay. In lieu of this demotion, Plaintiff elected to take paid administrative leave using her vacation time. Due to her loss of income she was forced to sell her house. HARTMAN had been working safely during the height of the pandemic by wearing personal protective gear and using a facemask with a shield. Due to the virulence of the first wave of COVID-19 her work at that time was far more dangerous to herself and the public

than any similar work she could perform today. The only logical reason for SCC's (or SCVMC's) failure to accommodate her as a radiation therapist is that the County was/is trying to coerce HARTMAN into choosing her career over her faith.

9. Plaintiff DR. LIGHTFOOT was, at all times relevant to this action, a qualified/eligible employee of Defendant SCC, working for SCVMC within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in San Mateo County, California. She was a resident in internship at SCVMC, with a one-year contract for said residency. When she started in June 2021, Plaintiff was not informed that she would be required to get the COVID-19 vaccine as a condition of employment. Based on her Christian faith, her belief in the sanctity of life, and her objection to using a vaccine derived from aborted fetuses, she filed a request for a religious accommodation, which was provisionally granted through October 2021. She also responded to questionnaires about her faith provided by SCVMC. However, despite DR. LIGHTFOOT's willingness to undergo daily testing and to wear an N95 mask at all times while in the hospital, SCVMC denied her request for a permanent accommodation that would allow her to complete her residency. Instead, DR. LIGHTFOOT was allowed to conduct eight weeks of non-patient-facing research/reading block time, which expired on January 2022. Thereafter, she used her paid vacation time which has now run out. She was then forced to take an unpaid leave of absence. SCVMC's unwillingness to provide an accommodation that will allow her to meet with patients severely prejudices her chance of finishing her residency, and thereby her career. Although DR. LIGHTFOOT would be willing to transfer to another program that does not have a vaccine mandate, most programs do not have funding for an additional resident. She thus asked SCVMC to write a letter to the Accreditation Council for Graduate Medical Education (ACGME), asking them to invoke their policy for displaced residents, which would allow a transfer program to request additional funding. However, SCVMC flatly refused to assist DR. LIGHTFOOT, even

though it is no longer allowing her to continue her training. Instead of assisting her with a transfer, Plaintiff's program director, Defendant DR. JACOBSON, sabotaged her medical career by reporting on her vaccine status to a residency program in New York where she is scheduled to complete another, different residency. In the course of numerous meetings in which he interrogated DR. LIGHTFOOT about her religious beliefs, DR. JACOBSON repeatedly warned her that her religious beliefs may preclude her from practicing medicine. That interrogation points to the real reason for the failure to accommodate—DR. JACOBSON was/is coercing Plaintiff to abandon her faith in order to continue employment. At no point has SCVMC questioned the sincerity of DR. LIGHTFOOT's religious beliefs or the sincerity of any other Plaintiff's beliefs.

10. Plaintiffs have received right to sue letters from the EEOC or the DFEH.

**Defendants**

11. Defendant SCC is a qualified/eligible employer within the meaning of the California Fair Employment and Housing Act and Title VII. It is an administrative and political subdivision of California that consists of a geographic region with specific boundaries and some level of governmental authority. It employs, i.e., pays Plaintiffs HARTMAN and DR. LIGHTFOOT. Both Plaintiffs work at SCVMC, which is a prominent 731-bed public tertiary, teaching, and research public hospital in San Jose. SCVMC is an agency within SCC.

12. Defendant PAUL E. LORENZ is the Executive Director of SCVMC. He is directly responsible for enforcing SCC's vaccine mandate at SCVMC.

13. Defendant DR. DAVID JACOBSON is the Program Director for internal medicine residents at SCVMC. He has repeatedly interrogated DR. LIGHTFOOT about her religious beliefs, insinuating that they are somehow insincere, which they are not. DR. JACOBSON is primarily responsible for denying DR. LIGHTFOOT an accommodation that would allow her to continue her training, such as by wearing personal protective equipment, face shields, or masks (as

healthcare providers did for nearly a year before the vaccines became available) and being tested either daily or twice weekly. He has also acted improperly by contacting DR. LIGHTFOOT's future employer and disclosing her vaccination status. Instead of advocating for DR. LIGHTFOOT, he has repeatedly warned her that her religious beliefs would likely preclude her from ever practicing medicine. DR. LIGHTFOOT understood these comments as threats designed to coerce her to violate her religious beliefs by taking the vaccine. On information and belief, DR. JACOBSON was also involved in SCVMC's decision to reject DR. LIGHTFOOT's request to assist her in asking ACGME (the governing body over graduate medical education) to designate her as a displaced resident. As a result, DR. LIGHTFOOT will likely be unable to transfer to a program that does not have a vaccine mandate (of which there are several). This decision to not assist DR. LIGHTFOOT was apparently motivated by a continued desire to coerce her to choose between her faith and employment.

14. Defendant JEFFREY V. SMITH is the County Executive for SCC. The office of the County Executive provides analytical support, strategic planning, policy analysis, and budgetary oversight for the County. In addition, the office seeks to safeguard the civil rights and to educate, inform, and advise both those who administer and those who receive County services. Defendant SMITH is directly responsible for issuing the SCC vaccine mandate at issue in this case. That mandate required all County employees to be vaccinated or face termination.

15. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 100, inclusive are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and are legally responsible in some

manner. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

16. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, the SCC defendants, as well as the fictitiously named Defendants, and each of them, were agents and employees of the remaining Defendants, and in so doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining Defendants.

## STATEMENT OF FACTS

17. Due to the vaccine mandates, supra, Plaintiffs have been forced to take administrative leave and to use sick time, vacation time, and FMLA time in order to mitigate their damages and to "buy" time while this litigation progresses.

18. Plaintiffs have refused to be coerced into violating their sincerely held religious beliefs. HARTMAN has been forced to sell her house because she can no longer afford the payments.

19. By refusing coercion to abandon her faith, DR. LIGHTFOOT will lose her career.

20. The Defendants arbitrarily and unreasonably implemented the mandates. The mandates fail to address the reality that unvaccinated employees with accommodations can safely perform their job duties protecting themselves, fellow employees, and the community they serve through non-pharmaceutical interventions, such as daily health screenings, wearing masks, quarantining, and, in some cases, telecommuting for work. Before the mandates were implemented, the Plaintiffs were called heroes for staying on the job and working through the worst of the COVID-19 pandemic. During that time, the Defendants relied on weekly testing, wearing masks and PPE, and telecommuting as the primary means of protecting the peace, health, and safety of the public, other employees, and themselves. Now Plaintiffs are being terminated because they do not want to

take a vaccine that violates their protected religious beliefs, and because Defendants will not admit the efficacy of the prior means of protecting the public and their employees.

21. The mandates at issue ignore peer-reviewed studies comparing naturally acquired and vaccine acquired immunity. Those studies show overwhelmingly that natural immunity provides equivalent or greater protection against severe infection from COVID-19 than immunity generated by mRNA vaccines. SCC and the Santa Clara County Executive do not and cannot point to any evidence that vaccinated individuals have longer lasting or more complete immunity than those who have recovered from COVID-19. Early data also suggests that naturally acquired immunity may provide greater protection against COVID-19 variants than vaccine-induced immunity.

22. SCC's refusal to allow an opt out, especially for employees with naturally acquired immunity, is not based on science. In line with this unreasonable and arbitrary refusal, SCC does not provide any process for employees to submit test results showing antibodies that provide natural immunity from COVID-19.

23. The mandates further presume that requiring vaccination of an individual that has already contracted and recovered from COVID-19 will not cause any short-term or long-term injuries. This presumption is based on absolutely no evidence and is purely conjectural.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq*.**
**(Against All Named Defendants)**

24. Paragraphs 1 through 23 are hereby incorporated and realleged as though fully set forth herein.

25. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provides broad workplace protections for people of sincere religious faith.

26. Among other protections, it is generally unlawful for an employer to "exclude or to suspend an employee, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1).

27. Within this framework, Title VII requires an employer to reasonably accommodate an employee's sincere religious observances and practices, unless such an accommodation would impose an undue hardship on the employer. "Reasonable accommodation" means a modification or adjustment to the workplace that enables the employee to perform essential functions of the job held or desired. Accommodation can be made herein by simply having Plaintiffs follow the same protocols followed at the height of the pandemic, when they were considered heroes for continuing to work. Doing so does not impose an undue hardship on SCC, SCVMC, or the general public.

28. Pursuant to 42 U.S.C. § 2000e(j), "religion" in the employment context is defined as "all aspects of religious observance and practice, as well as belief." In view of this broad definition by Congress, it cannot be said that any employer covered by Title VII may legally or constitutionally require an employee to belong to any "bona-fide" religious organization as a condition for receiving an accommodation.

29. Title VII protects the Plaintiffs and other County employees' rights to request religious or medical accommodations, as needed. The employer is required to evaluate the request and determine through an interactive process whether reasonable accommodations can occur and the employee must be provided a reasonable opportunity to submit such requests. Defendants have utterly failed to make reasonable accommodations for the Plaintiffs' religious accommodation requests. Given that employees could submit to daily health screenings, wearing masks, quarantining, and telecommuting for work, those requests for accommodation would not amount to an undue hardship on the Defendants. Such adjustments to the workplace would enable the

employees to perform the essential functions of the jobs that they held, i.e., for HARTMAN, a radiation therapist, and for DR. LIGHTFOOT, a medical residency.

30. Plaintiffs' right to free exercise of religion under Title VII cannot be conditioned on the Defendants' irrational mandates. As Christians who believe in the sanctity of life they will not take vaccines derived from aborted fetal cell lines. Defendants, in denying the Plaintiffs' exemptions, were acting under color of law and doing so in order to coerce the Plaintiffs into choosing employment over their faith. That coercion is harmful in and of itself and cannot be remedied after the fact and is a violation of their fundamental civil rights under the First Amendment and Title VII. Plaintiffs have been damaged as a result, and also seek equitable relief from these irrational mandates.

31. Plaintiffs herein seek declaratory and injunctive relief, mandating that Defendants accommodate their religious accommodation requests. Plaintiffs further request the same relief for medical exemptions based on having had COVID-19 and its concomitant antibodies.

**SECOND CAUSE OF ACTION**
**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 *et seq*.) – Failure to Provide Religious Accommodation**
**(Against All Named Defendants)**

32. Plaintiffs hereby incorporate and reallege the preceding paragraphs 1 through 31 as though fully set forth herein.

33. Under FEHA, it is an unlawful employment practice for an employer to discriminate against any employee or other covered person because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer demonstrates that it has explored any available, reasonable means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with

their belief and observance, or permitting those duties to be performed at another time or by another person.

34. Plaintiffs are persons and employees of Defendants within the meaning of FEHA.

35. Defendants were at all times relevant herein employers for purposes of FEHA.

36. Plaintiffs are able to perform the essential functions of their jobs with Defendants and have been doing so successfully and commendably for many years, including working during the height of the pandemic.

37. The positions for which Plaintiffs were hired did not mention mandatory vaccines in their job postings, descriptions, or essential duties.

38. Nevertheless, the mandates at issue make clear that accepting certain vaccines are suddenly a de facto expectation for their positions.

39. Plaintiffs have strong, sincerely held religious beliefs that taking the COVID-19 vaccines would be morally wrong for them. This is due to the fact that as Christians they have a duty to uphold the sanctity of life and they want no part of vaccines that are derived from aborted fetal cell lines.

40. Plaintiffs have notified their supervisors of the conflict and in fact requested accommodations and were denied.

41. A reasonable accommodation would permit Plaintiffs to continue performing their essential functions as they have been doing for many years. "Reasonable accommodation" means a modification or adjustment to the workplace that would enable the Plaintiffs to perform the essential functions of the job they once held. Such accommodation can be made by simply having Plaintiffs follow the same protocols that were followed at the height of the pandemic, when they were considered heroes for continuing to work. Those adjustments would enable the Plaintiffs to

perform the essential functions of the jobs that they held, i.e., for HARTMAN, a radiation therapist, and for DR. LIGHTFOOT, a medical residency.

42. Defendants refused to explore available reasonable alternatives to the stated vaccine requirement or engage in any timely, interactive, meaningful, or good faith process with Plaintiffs to ascertain whether, in light of their extensive backgrounds and experience, they could in fact perform the essential functions of their positions without being vaccinated.

43. Defendants' refusal to accommodate, or even explore possible accommodation of Plaintiffs' religious beliefs, was a substantial motivating factor in Defendants' decision to restrict the terms and conditions of their employment.

44. Defendants intentionally violated Plaintiffs' rights with malice because they wanted to coerce the Plaintiffs into choosing between their faith and continued employment.

45. As a result of Defendants' discriminatory actions, Plaintiffs suffered harm and are entitled to recover damages including but not limited to mental suffering, past and future lost earnings and benefits, and other compensatory damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray this Court grants relief as follows:

1. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for religious accommodations to taking the COVID-19 vaccinations;

2. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for medical exemptions based on having COVID-19 antibodies acquired as a result of surviving a COVID-19 infection;

3. Plaintiffs request compensatory damages in an amount according to proof;

4. Plaintiffs request reasonable costs of suit and attorneys' fees;

5. Plaintiffs request such other and further relief as the Court may deem appropriate.

Dated: March 4, 2022

                                          /s/ Russell Davis
                                         Russell Davis, Esq.
                                         Kevin T. Snider, Esq.
                                         PACIFIC JUSTICE INSTITUTE

                                         *Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

                                          /s/ Russell Davis
                                         Russell Davis, Esq.
                                         Kevin T. Snider, Esq.
                                         PACIFIC JUSTICE INSTITUTE

                                         *Attorneys for the Plaintiffs*

## VERIFICATION

I, Shannon Hartman, am one of the plaintiffs in the above-captioned matter. I have read the VERIFIED COMPLAINT and am familiar with same. The contents are true and accurate and known to me by personal knowledge, except for those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this ___4th___ Day of March, 2022, in the County of __Santa Clara__, State of California.

_____
Plaintiff

## VERIFICATION

I, Katie Lightfoot, MD, am one of the plaintiffs in the above-captioned matter. I have read the VERIFIED COMPLAINT and am familiar with same. The contents are true and accurate and known to me by personal knowledge, except for those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this ___7___ Day of March, 2022, in the County of __San Mateo__, State of California.

_____Katie Lightfoot_____
Plaintiff